IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

**THOMAS CULBERTSON, individually
and on behalf of all others similarly situated,**

    **Plaintiff,**

v.                              CIVIL ACTION NO. 2:21-cv-00532

**CHRISTOPHER GODFREY, and
U.S. DEPARTMENT OF LABOR,
OFFICE OF WORKERS' COMPENSATION PROGRAMS,**

    **Defendants.**

## COMPLAINT

1.    Totally-disabled coal miners often fight against coal operators for many years to secure federal black lung benefits, which include lifetime indemnity payments and medical benefits, with no co-pays or deductibles, for breathing-related treatment. However, in a longstanding but little-known practice, the U.S. Department of Labor does not provide medical cards (or any meaningful notice about the extremely valuable medical benefits) to many miners.

2.    Specifically, the Department's practice entails not providing for notice about medical benefits to any federal black lung beneficiary who has also received an award for black lung disease under a state workers' compensation program. While state workers' compensation awards might provide partial medical benefits, many state awards do not provide any medical benefits at all, or they leave a substantial unpaid portion that should be paid by the federal claim. So, the Department's practice leaves miners with substantial unpaid medical costs that should have been borne by the entity responsible for paying their federal benefits---usually a coal company.

1

3. Thus, even after miners fight for years and win federal black lung benefits, many of them have no notice about how to utilize the most valuable part of their federal black lung benefits, which is the medical coverage that will completely pay for their breathing-related treatment, encompassing potentially millions of dollars of medical care (lung transplants, etc.) for each federal beneficiary.

4. When a miner lacks notice, he will often go without needed care, or survive on free samples of inhalers from his local clinic, or else he might receive the necessary care with the costs shifting to Medicare, union healthcare funds, the miner himself, or other parties that should not be liable for payment. This is what happened to the Plaintiff, and why he now comes to this Court.

5. For these reasons, NOW COMES Plaintiff, Thomas Culbertson, on behalf of himself and others similarly situated, and brings this class action complaint for declaratory judgment and injunctive relief against Defendants---the U.S. Department of Labor's Office of Workers' Compensation Programs (OWCP), including the Division of Coal Mine Workers' Compensation, and the current director of OWCP, Mr. Christopher Godfrey---seeking for this Court to declare that the Defendants must comply with their statutory duties under 30 U.S.C. Sec. 932, 33 U.S.C. Sec. 907, and with the black-letter requirements of their own existing regulations, 20 C.F.R. Sec. 725.704, by issuing medical cards that provide miners and medical providers with adequate, specific notice about how to secure cost-free medical treatment and services for severe, totally-disabling black lung disease, by providing accurate, updated reports on the medical care received by miners under the Act, and by actively supervising the care received by miners under the Act in furtherance of the interests of those miners.

## JURISDICTION AND VENUE

6. Jurisdiction over Plaintiff's claims is founded on the existence of a federal question. This action arises under the Administrative Procedure Act, 5 U.S.C. §§ 702, 706, and the Fifth Amendment to the U.S. Constitution, and jurisdiction is conferred pursuant to 28 U.S.C. § 1331 (federal question).

7. Venue is proper in this District pursuant to 28 U.S.C. 1391 because this District is where a substantial portion of the events or omissions giving rise to this action occurred.

8. This Court is empowered to grant declaratory and injunctive relief under 28 U.S.C. § 2201 (declaratory judgment), 28 U.S.C. § 2202 (injunctive relief), and 5 U.S.C. §§ 701-706, for violations of, *inter alia*, the APA, 5 U.S.C. § 706, and because the Department's actions are contrary to the Fifth Amendment to the U.S. Constitution.

## PARTIES

9. Plaintiff Culbertson was at all times relevant a resident of McDowell County, West Virginia.

10. At all relevant times, Defendants conducted operations, including the decision-making in the adjudication of Plaintiff's federal black lung claim, at the OWCP offices located at 500 Quarrier Street, Charleston, West Virginia 25301. This office has customarily served as the principal office for processing federal black lung benefit claims for southern West Virginia.

11. Defendant, Mr. Christopher Godfrey, is the current director of the Office of Workers' Compensation Programs of the U.S. Department of Labor. Mr. Godfrey has only been director of OWCP since January 20, 2021; however, he currently possesses authority to remedy the decades of wrongful conduct addressed in this Complaint.

**STATEMENT OF FACTS**

12. ***Overview of Federal Black Lung Program.*** "Coal workers' pneumoconiosis" or "black lung disease" is a chronic dust disease of the lung, and the sequelae of such disease, including respiratory and pulmonary impairments, arising out of coal mine employment. Black lung includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosis, anthrosilicosis, massive pulmonary fibrosis, silicosis or silicotuberculosis, and chronic obstructive pulmonary disease or other pulmonary impairments arising out of coal mine employment.

13. The Federal Coal Mine Health and Safety Act of 1969 created the first FBL program that provided indemnity/cash benefits only, was paid for with public funds, administered by the Social Security Administration (SSA), and began paying benefits to miners in 1970.

14. The Black Lung Benefits Act of 1972 (BLBA) simplified eligibility criteria for all claims filed with the SSA under what is now known as "Part B," which pays for all claims filed on or before July 1, 1973.  The BLBA transferred the processing of new claims to the U.S. Department of Labor (USDOL) in 1973 under a new FBL program known as "Part C."

15. Part C provides lifetime disability compensation and medical treatment benefits to miners totally disabled due to pneumoconiosis arising out of coal mine employment, and compensation to their eligible survivors.

16. The Black Lung Benefits Reform Act of 1977 amended the BLBA and mandated that all pending and denied Part C claims be reopened and reviewed using less stringent interim medical criteria.

17.  The Black Lung Benefits Revenue Act of 1977 amended the BLBA and created the Black Lung Disability Trust Fund, financed by an excise tax on coal mined and sold in the

United States. It also permitted miners approved under Part B to apply for medical benefits available under Part C.

18. A miner who is entitled to disability benefits under the BLBA is also entitled to medical benefits. *See* 33 U.S.C. 907, as incorporated by 30 U.S.C. 932(a); 20 CFR 725.701. Those medical benefits entitle a miner to medical, surgical, and other treatment—including hospital services, medicine, equipment, and supplies—for his or her pneumoconiosis and related disability. *See* 20 CFR 725.701(b).

19. The BLBA places a *parens patriae* duty on the Secretary of Labor to "actively supervise the medical care" provided to miners, including duties to report on the medical care provided to miners under the Act, and even to order a change of physicians or hospitals when desirable or necessary in the interest of the miner:

> The Secretary shall actively supervise the medical care rendered to injured employees, shall require periodic reports as to the medical care being rendered to injured employees, shall have authority to determine the necessity, character, and sufficiency of any medical aid furnished or to be furnished, and may, on his own initiative or at the request of the employer, order a change of physicians or hospitals when in his judgment such change is desirable or necessary in the interest of the employee ….

33 U.S.C. Sec. 907.

20. The BLBA, as amended, further requires that "[b]enefits shall be paid during such period [in which a miner is eligible] by each such operator [or the Trust Fund] under this section to the categories of persons entitled to benefits under section 922(a) of this title in accordance with the regulations of the Secretary applicable under this section[.]" 30 U.S.C. 932(c).

21. Benefits are paid by either a "responsible" coal mine operator (or its insurance carrier), or the Trust Fund. OWCP pays medical benefits from the Trust Fund in three instances: (1) If no responsible operator can be identified as the party liable for a claim, and the Trust Fund is liable as a result (*see* 20 CFR 725.701(b)); (2) when the identified responsible operator declines

to pay benefits pending final adjudication of a claim (*see* 20 CFR 725.522, 725.708(b)); and (3) when the responsible operator fails to meet its payment obligations on an effective award (*see* 20 CFR 725.502). For interim payments made pending final adjudication, OWCP seeks reimbursement from the operator after the claim is finally awarded. *See* 20 CFR 725.602(a).

22. The rules governing the payment of medical benefits are contained in 20 CFR part 725, subpart J.

### *State Workers' Compensation Benefits Can (But Do Not Always) Offset or Reduce Federal Black Lung Medical Benefits*

23. The BLBA provides that the amount of FBL benefits is to be reduced by any amounts that are paid pursuant to an award of worker's compensation benefits for black lung disease under a state workers' compensation statute. *See* 30 U.S.C. 932(g).

24. The Defendant has promulgated regulations to carry out the provisions regarding offset and payment of FBL benefits pursuant to 33 U.S.C. Sec. 907(g) (payment of medical benefits); 30 U.S.C. Secs. 921(a) (payment of benefits generally), 932(a), (d), and 936(a).

25. The first American state to provide workers' compensation benefits for black lung was Alabama in 1952. During the 1960s, unauthorized "wildcat" strikes throughout the southern coalfields of West Virginia led to the enactment of a state workers' compensation program in West Virginia, and eventually catalyzed the creation of a federal black lung compensation program.

26. Throughout the history of the Part C program, both the cash benefits and medical benefits have been subject to a reduction (known as an "offset") equal to the amounts of cash or medical benefits that are provided (if any) under a miner's state black lung award.

27. State workers' compensation programs are diverse, and they may provide either an indemnity/cash payment or medical benefits or both. For state programs that provide medical benefits, these benefits are customarily limited in scope unlike the FBL medical benefits.

28. State workers' compensation programs often provide benefits for partial disability, so that a miner may receive a limited cash payment, or limited medical benefits (such as a single free pulmonary examination once annually) based on a miner's partial impairment rating.

29. The Black Lung Benefits Act provides an equivalency test and a mechanism for assessing the equivalence of the state and federal black lung compensation programs (30 U.S.C. 931). However, no state workers' compensation program has been determined to offer benefits for black lung that are equivalent to those offered in the FBL program. That is, in every case in which a miner has been awarded benefits under a state workers' compensation program for black lung, he or she is entitled to greater benefits if determined to be eligible for the FBL program, including greater medical benefits, than those to which he or she was entitled under the state program.

30. In many state black lung awards, the miner is only eligible to receive indemnity payments and is not eligible to receive any medical benefits at all.

31. The medical benefits, if any, that are provided under state workers' compensation awards for black lung are generally much less generous than those provided by the FBL program. Thus, if any medical benefits are payable under a state workers' compensation award, the miner is often also eligible for FBL to pick up the charges that are not covered by the state award.

32. Black lung is a latent and progressive disease, which can take years to progress from its simple to its more advanced and totally-disabling stages.

33. Consequently, miners routinely develop a partial pulmonary impairment, and thus become eligible to receive state black lung benefits, several years before they become totally disabled and eligible for FBL benefits.

34. In states that offer partial workers' compensation awards for black lung, many if not most federal black lung beneficiaries have previously received an award of state workers'

compensation benefits for partial impairment due to black lung before they become eligible for FBL benefits.

35. The state laws in all of the major coal-mining states in America also provide for state workers' compensation benefits for occupational disease, including: Alabama (Al. Code § 25-5-172), Colorado (Co. Rev. Stat. 8-42-101 et seq.), Illinois (820 ILCS § 310/1 et seq.), Indiana (In. Code § 22-3-7-9), Kentucky (Ky. Rev. Stat. § 342.732), Maryland (Md. Code, Lab. & Empl. § 9-502), Michigan (Mich. Comp. Laws § 418.301), North Carolina (N. C. Gen. Stat. § 97-53(13)), Ohio (41 ORC § 4123.85), Pennsylvania (77 P.S. § 1401), Tennessee (Tenn. Code Ann. § 50-6-301), Virginia (Va. Code § 65.1-52), and West Virginia (W. Va. Code § 23-5-15).

36. As of September 30, 2020, there were 18,075 active primary beneficiaries in the FBL program, with the aforementioned states comprising the following numbers of FBL claimants:

   a. Alabama – 430
   b. Colorado – 111
   c. Illinois – 383
   d. Indiana – 251
   e. Kentucky – 4,579
   f. Maryland – 60
   g. Michigan – 69
   h. North Carolina – 206
   i. Ohio – 804
   j. Pennsylvania – 2,363
   k. Tennessee – 683

    **l.** Virginia – 2,631

    **m.** West Virginia – 4,537

    <u>TOTAL</u>: 17,107

37. Thus, the vast majority of FBL beneficiaries reside in states that provide offsetting state workers' compensation benefits.

> ***The FBL Program Provides Medical Cards to Beneficiaries --- Unless They Have a Prior Award of State Workers' Compensation for Black Lung, In Which Case the FBL Program Has Adopted an* Ultra Vires *Practice of Not Issuing Any Such Medical Card.***

38. 30 C.F.R. Section 725.704 sets forth the procedures by which the OWCP makes arrangements for provision of medical care to FBL beneficiaries:

> 725.704 How are arrangements for medical care made?
>
> (a) Operator liability. If an operator has been determined liable for the payment of benefits to a miner, OWCP will notify the operator or its insurance carrier of the names, addresses, and telephone numbers of the authorized providers of medical benefits chosen by an entitled miner, and require the operator or carrier to:
>
> (1) Notify the miner and the providers chosen that the operator or carrier will be responsible for the cost of medical services provided to the miner on account of the miner's total disability due to pneumoconiosis;
>
> (2) Designate a person or persons with decision-making authority with whom OWCP, the miner and authorized providers may communicate on matters involving medical benefits provided under this subpart and notify OWCP, the miner and providers of this designation;
>
> (3) Make arrangements for the direct reimbursement of providers for their services.
>
> (b) Fund liability. If there is no operator found liable for the payment of benefits, OWCP will make necessary arrangements to provide medical care to the miner, notify the miner and providers selected of the liability of the fund, designate a person or persons with whom the miner or provider may communicate on matters relating to medical care, and make arrangements for the direct reimbursement of the medical provider.
>
> 20 C.F.R. Sec. 725.704.

*Overview of Relevant Portions of the Lengthy Procedures for Awarding an FBL Claim and Paying Benefits*

39. When the Department concludes that a miner has demonstrated by a preponderance of evidence that he is entitled to federal black lung benefits, the DCMWC issues what is known as a Proposed Decision and Order (PDO) awarding benefits. The payor for the claim (either a Responsible Operator of the Trust Fund) has the option to request a formal hearing before the Office of Administrative Law Judges, and then to appeal the judge's decision to the Benefits Review Board and on up to the federal circuit courts of appeals and the U.S. Supreme Court---a process that often takes years.

40. While the numerous hearings and appeals are pending, the Department provides interim benefits (both medical benefits and cash payments) that are paid from the Trust Fund. If the award is affirmed, the Responsible Operator is required to reimburse the Trust Fund for those interim benefits and then the Responsible Operator is liable to the Miner, and his or her dependents, to pay all future benefits under the claim.

41. At the time that the Department issues a PDO, they also issue a medical card as a default action. This card states boldly on the face of it that it is a card for federal black lung benefits, and declares "**No Copay and No Deductible**" in bold, capital lettering. On the back of the card, there is contact information for the claims adjusters at the Department of Labor who can handle any disputes about billing or the compensability of treatment.

42. The Department's website includes a document entitled "Black Lung Medical Benefits: Questions and Answers About the Federal Black Lung Program" that states:

> Question 6: I have been awarded Black Lung benefits under both the Federal Black Lung Program and a State Workers' Compensation Program. Should I have received a Black Lung card?

Answer: If you have been awarded benefits for your Black Lung condition under a State Workers' Compensation Program, you will NOT receive an identification card from the Federal Black Lung Program. Expenses for the treatment of your black lung condition that are not covered by the state program may be covered by the Federal Black Lung Program.

Black Lung Medical Benefits: Questions and Answers About the Federal Black Lung Program, Publication CM-6 (July 2020).

***Plaintiff Receives Federal Black Lung Benefits, But Never Received a Medical Card.***

43. On April 11, 2016, the Plaintiff, Mr. Thomas Culbertson, applied for federal black lung benefits.

44. The Responsible Operator for Mr. Culbertson's federal benefits was Extra Energy, Inc.

45. On November 13, 2017, the FBL program issued a Proposed Decision and Order awarding benefits to Mr. Culbertson. The responsible operator, Extra Energy, requested a formal hearing. A hearing on the merits of Mr. Culbertson's case was not scheduled for several years due---according to the Department of Labor---to a flood in the basement of the Department of Labor in Washington, DC.

46. On November 19, 2020, a hearing on the merits of Mr. Culbertson's case was held before the U.S. Department of Labor's Office of Administrative Law Judges.

47. While Mr. Culbertson waits on a final decision on the merits of his case, the Defendants should have issued him a medical card to provide notice to his medical providers regarding where and how to remit his claims for medical treatment and services related to his black lung disease that has been deemed compensable by Defendants. Defendants customarily pay such claims while a miner awaits a hearing on the merits of his case, and then seek reimbursement from the Responsible Operator if the claim is finally adjudicated in favor of the miner.

48. However, pursuant to their practice of not issuing medical benefit cards to miners with prior state black lung awards, the Defendants never issued a medical benefit card to Mr. Culbertson.

49. Previously, Mr. Culbertson had received an award of benefits from the State of West Virginia's Workers' Compensation Office of Judges, finding that he had 25% impairment due to black lung.

50. Under the West Virginia workers' compensation program, a 25% black lung award provides certain limited medical benefits, but those benefits do not pay for all of the breathing treatment necessitated by Mr. Culbertson's pulmonary impairment.

51. Mr. Culbertson's healthcare providers have been unable to secure payment under the 25% state award for Mr. Culberton's breathing treatments. The insurance carrier for that state award has also failed to issue a written denial for the claims. Accordingly, the Plaintiff's medical providers have been unable to tender written evidence of a denial to the Defendants. Consequently the Defendants have avoided paying for Mr. Culbertson's medical treatment.

52. Mr. Culbertson has had to get by on free samples of breathing medicine because his medical providers have been unable to ascertain how to successfully remit the payments to the Defendants. That is because the providers lack the very type of specific notice regarding how to challenge non-payment and lack any document (such as a medical card) with reference to which they could seek reimbursement from the Defendants.

53. The Defendants' failure to provide a medical card to the Plaintiff has placed the Plaintiff and his medical providers in precisely the position that the BLBA provides for them *not* to occupy---i.e. this places the burden on the miner and the medical providers to act as claims adjusters on behalf of Defendants, attempting to sort out the subrogation of liability for medical

claims between the providers of the state and federal black lung benefits, instead of Defendants doing that as part of their duties in administering the FBL program.

54. As a result, Mr. Culbertson has gone for years without adequate medical treatment because the Defendants' actions have stuck him and his medical providers between a rock and a hard place, with no effective means by which his medical providers can secure access to the medical benefits that Defendants have determined that Mr. Culbertson is entitled to possess.

### *The Secretary of Labor has Failed to Report on the Medical Benefits Received by Miners*

55. 33 U.S.C. Sec. 907(b) states that the Secretary of Labor "shall require periodic reports as to the medical care being rendered to injured employees[.]"

56. The Secretary customarily acts through the Office of Workers' Compensation Programs, and through OWCP's Division of Coal Mine Workers' Compensation (DCMWC) for purposes of the FBL program. *See generally* 29 C.F.R. Part 1, § 1.1 ("The Secretary of Labor has delegated authority and assigned responsibility to the Director of OWCP for the Department of Labor's programs under the following statutes: [Black Lung Benefits Act].")

57. The Defendants do not publicly report on a periodic basis about the medical care being rendered to coal miners under the BLBA. Synoptic data about the number of claims approved is included in annual program statistics, but that data provides no information about the nature or overall amount of medical care being rendered to coal miners under the BLBA.

58. The Defendants are also failing to report internally within OWCP to apprise claims examiners and program administrators about the payment of medical benefits, especially as it relates to offsets for state compensation awards, and are failing to provide guidance to claims examiners regarding how to operate and administer the offset of medical benefits for FBL beneficiaries with state awards. The DCMWC Procedure Manual contains an Exhibit 102

regarding state workers' compensation programs. However, Exhibit 102, which was last updated in August 2020, does not contain complete information about all state workers' compensation programs---specifically omitting Colorado, Michigan, Tennessee, among others. Furthermore, Exhibit 102 does not contain any consistent or specific guidance about the operation of medical benefits under the state workers' compensation programs or how those medical claims are offset against FBL benefits. The Procedure Manual's section regarding offsets, 2-1403, similarly does not provide any specific guidance about the operation of medical benefits offsets.

## CLASS ALLEGATIONS

59. Plaintiff brings this action on his own behalf and on behalf of all other similarly situated individuals, pursuant to Rule 23 of the *Federal Rules of Civil Procedure*. The class consists of all coal miners who are federal black lung beneficiaries and have also received a state workers' compensation award related to occupational pneumoconiosis ("black lung").

60. The requirements of Rule 23(a) are satisfied as follows:

(a) The class is numerous, with thousands of members, and joinder is impracticable due to the high number of plaintiffs that would frustrate the coordination of multi-plaintiff litigation involving so many affected individuals;

(b) There are questions of law and fact common to all members of the class, which predominate over any questions affecting only individual members, i.e. did the Defendants fail to issue meaningful notice regarding the availability of medical benefits on the federal black lung awards received by the class members; and

(c) The named Plaintiff's claims are typical of those of the class as a whole because the named Plaintiff was bereft of notice in the same manner as were the rest of the putative class members.

(d)   The Plaintiffs have displayed an interest in vindicating the rights of the class members, will fairly and adequately protect and represent the interests of the class, and are represented by skillful and knowledgeable counsel.  The relief sought by the named Plaintiffs will inure to the benefit of the class generally.

61.   The requirements of Rule 23(b) are also satisfied as follows:

(a)   Prosecuting separate actions by individual class members would create a risk of: (1) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (2) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(b)   Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole;  and

(c)   questions of law and fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## COUNT I – DECLARATORY JUDGMENT
## 5 U.S.C. § 702, 706

62.   Plaintiff incorporates the preceding paragraphs by reference.

63.   A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof pursuant to the Administrative Procedure Act. 5 U.S.C. § 702.

64. In actions for declaratory judgment under the Administrative Procedure Act, "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall (1) compel agency action unlawfully withheld or unreasonably delayed[.]" 5 U.S.C. § 706(a).

65. In order to carry out the Secretary's *parens patriae* duties under 33 U.S.C. Sec. 907, *inter alia*, the BLBA regulations set forth the actions and requirements that apply to OWCP in making arrangements for medical care of miners. *See* 20 C.F.R. Sec. 725.704.

66. In cases where a responsible operator is liable for payment of FBL benefits, OWCP has adopted a practice of not requiring responsible operators or carriers to: (1) Notify the miner and the providers chosen that the operator or carrier will be responsible for the cost of medical services provided to the miner on account of the miner's total disability due to pneumoconiosis; (2) Designate a person or persons with decision-making authority with whom OWCP, the miner and authorized providers may communicate on matters involving medical benefits provided under this subpart and notify OWCP, the miner and providers of this designation; and (3) Make arrangements for the direct reimbursement of providers for their services.

67. In cases where the Trust Fund is temporarily or permanently liable for the payment of FBL benefits, OWCP has adopted a practice of not making necessary arrangements to provide medical care to the miner, not notifying the miner and the selected providers of the liability of the fund, the person or persons with whom the miner or provider may communicate on matters relating to medical care, and not making arrangements for the direct reimbursement of the medical provider, such as by issuing a medical card that the beneficiary may present to such providers.

68. This Court should declare that, by failing to issue the same medical cards to all federal black lung beneficiaries who are eligible to receive medical benefits by virtue of the FBL award, the Defendant is in violation of the requirements of the Black Lung Benefits Act (30 U.S.C. Sec. 932, 33 U.S.C. Sec. 907), the dictates of procedural due process, and Defendant's own interpretation of its duties under the Black Lung Benefits Act as set forth in 20 C.F.R. 725.704.

### COUNT II - DEPRIVATION OF PROCEDURAL DUE PROCESS
### (U.S. Constitution, Fifth Amendment)

69. Plaintiff incorporates the preceding paragraphs by reference.

70. Plaintiff possesses an important property interest in utilizing the benefits of his final award of lifetime medical benefits through the FBL program.

71. Plaintiff is entitled to a legal mechanism that affords him a reasonably anticipated measure of notice and an opportunity to contest the denial of payment of such benefits.

72. Consistent with the operation of insurance and workers' compensation benefits in the FBL program and in general, and consistent with the terms of the FBL regulations, the Plaintiff should have received a medical card that his medical providers could use to file claims that are payable by the Defendants under the FBL program.

73. The Fifth Amendment to the U.S. Constitution provides that "[n]o person shall … be deprived of life, liberty, or property, without due process of law."

74. A recipient of a government-dispensed benefit may not be subsequently deprived of that benefit without the protections of due process, such as by providing meaningful and effective notice regarding the benefits due to the beneficiary, as set forth in 20 C.F.R. 725.04.

75. Defendants have violated Plaintiffs' rights under the Fifth Amendment, without affording him due process of law, when they have failed to provide---or require responsible operators to provide---the notice set forth in 20 C.F.R. Sec. 725.704 by issuing medical cards to

FBL beneficiaries who are entitled to medical benefits, and Defendants will continue to do so into the future if Plaintiffs are not afforded the relief demanded below.

### COUNT III – VIOLATION OF ADMINISTRATICE PROCEDURE ACT
### 5 U.S.C. § 706(2)(A) – Arbitrary, Capricious, and Unlawful Agency Action

76.　Plaintiff incorporates the preceding paragraphs by reference.

77.　The APA empowers the Court to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A).

78.　Agency action is arbitrary and capricious if it is not the product of reasoned decision-making. This means, among other things, that an agency must provide an adequate evidentiary basis for its action and consider all important aspects of such action.

79.　The undersigned counsel has requested that the Defendants justify their refusal to issue a medical card to FBL beneficiaries who have received prior state black lung awards, but Defendants failed to produce any evidentiary basis in support of their inaction, let alone an adequate basis.

80.　Plaintiff has suffered a legal wrong and has been adversely affected and aggrieved by the Department's arbitrary and capricious conduct because he has lost any effective means by which he can utilize the medical benefits to which he is entitled, and the agency action must therefore be set aside and permanently enjoined.

### PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff pray that the Court:

I.　Declare that Defendants must issue the same medical cards to all federal black lung beneficiaries who are entitled to medical benefits, stating at a minimum: "No Co-Pay and No Deductible," and including the contact information for individuals responsible for

  decision-making regarding the payment of medical benefits so that miners and providers have a meaningful recourse if payment is delayed or denied; and further declare that the Defendants must adequately instruct their claims examiners and administrative staff, as well as report publicly, on the payment of federal black lung medical benefits for miners who also have state awards for black lung disease;

II.  Compel the Defendants to produce such medical cards, and take all necessary and proper measures to ensure that responsible coal operators do as well;

III.  Award such other equitable or remedial relief as may be appropriate;

IV.  Certify a class of all coal miners who are federal black lung beneficiaries and have also received a state workers' compensation award related to occupational pneumoconiosis ("black lung").

V.  Award to Plaintiffs and their attorneys all reasonable attorney fees, costs, and expenses incurred or earned by them, respectively, pursuant to 5 U.S.C. § 702; and

VI.  Grant any such other and further relief as this Court may deem equitable and just.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

                **Respectfully Submitted,**
                **THOMAS CULBERTSON, individually and on behalf of all others similarly situated,**
                **By counsel:**

 /s/ Samuel B. Petsonk
Samuel B. Petsonk (State Bar ID No. 12-418)
Petsonk PLLC
P.O. Box 1045
Beckley, WV 25802
(304) 712-9858 (office)
(304) 986-4633 (fax)
sam@petsonk.com